# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARTINEZ S. AYTCH,

    *Petitioner*,

vs.

ROBERT LEGRAND, *et al.*,

    *Respondents*.

3:10-cv-00767-RCJ-WGC

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion (#25) to dismiss.  In principal part, respondents contend that the petition is a mixed petition including unexhausted claims.

### Background

Petitioner Martinez Aytch challenges his 2008 Nevada state conviction, pursuant to a jury verdict, of two counts of grand larceny and one count of burglary and his adjudication as a habitual criminal.  He is serving four concurrent life sentences with the possibility of parole after ten years.[1]  He sought relief both on direct appeal and state post-conviction review.

### Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts.  To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts

_____

[1]#19, Ex. 25.

completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Reliance upon additional factual allegations in federal court that do not fundamentally alter the legal claim already considered by the state courts does not render a claim unexhausted. *See Vasquez v. Hillery*, 474 U.S. 254, 257-60 (1986).[2]

---

[2]Whether entirely new evidence then may be considered in federal court presents a different issue, however, separate and apart from the doctrine of exhaustion. In *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the Supreme Court held that deferential review on the merits pursuant to the AEDPA under 28 U.S.C. § 2254(d)(1) of a claim adjudicated on the merits by the state courts is restricted to the record that was before the state courts. The Court is persuaded by Judge Reed's analysis harmonizing *Vasquez* and *Pinholster*:

> The Court concludes . . . that the two rules can be harmonized, as the two rules in truth operate independently of one another. The *Vasquez* rule applies to all federal habeas claims, without regard to whether or not the claims later may be subject to deferential review on the merits under § 2254(d)(1). It would make little sense to restrict the rule announced in *Vasquez* to the ambit of evidence that may be considered on deferential review under *Pinholster* – based upon alleged inconsistency otherwise between the two rules – as to a habeas claim that instead was subject to *de novo* review rather than deferential AEDPA review. That is, there is no inconsistency – practical or otherwise – between the two rules in that instance because the *Pinholster* rule is inapplicable in that context.

> Thus, resolving the exhaustion issue according to the ambit of evidence that may be considered on deferential AEDPA review under *Pinholster* in truth would put the cart before the horse, with *Pinholster* being the cart. Analytically, the exhaustion issue should be resolved in the same manner without regard to whatever the scope of factual and legal review

(continued...)

Under *Rose v. Lundy*, 455 U.S. 509 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

Petitioner raises a number of general, across-the-board arguments seeking to establish exhaustion or overcome the lack of exhaustion that he then refers back to in arguing the exhaustion of particular claims.  The Court thus addresses petitioner's general arguments first before turning to a discussion of the particular claims.

### General Arguments

Petitioner first contends, under "Standard for Exhaustion," that "[a] proper analysis requires this Court to determine whether Petitioner was 'diligent in his efforts' to develop the new evidence in state court."  He postulates a threshold question of whether "the petitioner has diligently pursued the appropriate state court remedies."[3]

This argument is cut from whole cloth as a statement of *exhaustion* law.  The two Supreme Court decisions cited as support for the argument are cases applying the requirements of 28 U.S.C. § 2254(e)(2), not exhaustion doctrine.  That provision states that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings,

_____

[2](...continued)
> ultimately later may be on the merits, whether on deferential or *de novo* review.  Without a doubt, as a practical matter, in many cases additional factual allegations in the federal petition that will not render a claim unexhausted under *Vasquez* nonetheless will be excluded from federal consideration on the merits under *Pinholster* as to claims subject to deferential AEDPA review.  However, as to claims instead subject to *de novo* review, the rule in *Vasquez* operates both independently from and not inconsistently with the rule in *Pinholster*.  These, again, are independent rules addressed to what are often practically interrelated but nonetheless legally distinct issues.
>
> The Court accordingly will follow the rule of exhaustion stated in *Vasquez* as a still fully viable rule following *Pinholster*.

*Moor v. Palmer*, No. 3:10-cv-00401-RCJ-WGC, #27, at 9-10 (D.Nev., July 17, 2012).  *Accord Lewis v. Nevada*, 2:10-cv-01225-PMP-CWH, #53, at 2-3 (D.Nev., Feb. 4, 2013)(following Judge Reed's analysis in *Moor*).

[3]#28, at 2, line 13; & 3, lines 1-5 & 9.

1   the court shall not hold an evidentiary hearing on the claim" except in narrowly-defined

2   circumstances.   Neither Supreme Court decision cited makes any holding regarding

3   exhaustion.  Both decisions discuss a habeas petitioner's diligence as bearing not upon

4   whether a claim was exhausted but instead on whether the petitioner could obtain a federal

5   evidentiary hearing under  § 2254(e)(2).[4]  The exhaustion of the claims involved was not at

6   issue, as, indeed, a federal court generally would not be considering whether to hold an

7   evidentiary hearing in the first instance on unexhausted claims.

8       As a corollary principle, petitioner posits that "a reviewing court must keep in mind that

9   when a state court forecloses further development of the factual record, it passes up the

10  opportunity to rule upon a claim that exhaustion insures."[5]   Petitioner states no rule of

11  exhaustion law.  Exhaustion turns upon whether the petitioner fairly presented the claim to

12  the state court in the first instance, not on how the state court handled the claim after it was

13  presented.    Simply because a state court, *e.g.,* does not appoint counsel to conduct

14  investigation and discovery or hold an evidentiary hearing does not signify that the state court

15  "passed up the opportunity to rule upon" – and thereby "exhausted" – a by definition limitless

16

17      [4] *See Holland v. Jackson*, 542 U.S. 649, 652-53 (2004); *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

18      [5] #28, at 3, lines 5-6.  The Tenth and Fourth Circuit cases upon which petitioner relies once again
    made no exhaustion holdings but instead in this instance were applying 28 U.S.C. § 2254(d)(1).  *See Wilson
19  v. Workman*, 577 F.3d 1284, 1292-93 (10th Cir. 2009)(*en banc*); *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir.
    2010).  That provision states in pertinent part that a writ of habeas corpus shall not be granted with respect to
20  a claim adjudicated on the merits by a state court unless the adjudication of the claim "resulted in a decision
    that was contrary to, or involved an unreasonable application of, clearly established Federal law, as
21  determined by the Supreme Court of the United States."  The Court further notes that the discussion in both
    cases predate the watershed Supreme Court decision in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011).  The
22  continuing viability of the discussion of  § 2254(d)(1) in both cases after *Pinholster* is subject to substantial
    question.  Indeed, the petitioner in *Atkins v. Clarke*, 642 F.3d 47 (1st Cir.), *cert. denied*, 132 S.Ct. 446 (2011),
23  relied specifically on *Wilson* and *Winston* for the proposition that a state court had not adjudicated a claim on
    the merits – *i.e.,* had passed up the opportunity to rule  – unless it provided a full and fair evidentiary hearing.
24  The First Circuit aptly pointed out that both decisions predated *Pinholster* and that "[t]o the extent these cases
    are inconsistent with [*Pinholster*] as to claims asserted under § 2254(d)(1), and that appears to be the point of
25  Atkins' citation to them, they are, of course, overruled."  642 F.3d at 49.  *Wilson* and *Winston* provide at best
    a shaky foundation for argument even on the actual issue that they ruled on, the application of  § 2254(d)(1).
26  They provide even less support for argument as to an issue, exhaustion, that was not before the courts.  No
    apposite case that constitutes controlling precedent in this Court holds, much less supports the view that,
27  claims not presented to a state court may be exhausted based upon a premise that the state court allegedly
    foreclosed further development of the factual record.  This corollary principle also simply is cut from whole
28  cloth as a principle of exhaustion law.

1    universe of claims based upon legal theories and facts that the petitioner never presented to

2    the state courts.  While petitioner seeks to turn the exhaustion issue into a question of what

3    the state court did or did not do, controlling *exhaustion* law instead requires that the *petitioner*

4    present both the legal theories and operative facts upon which his claims are based.  If the

5    state court does not appoint counsel or hold an evidentiary hearing, that perhaps may bear

6    on other issues, such as procedural default or the availability of a federal evidentiary hearing

7    as to *exhausted* claims, but it does not establish that claims that the petitioner never

8    presented to the state court are exhausted.

9         From these flawed legal premises, petitioner urges in the present case that the actions

10   and inactions of an "inattentive and negligent writ court" – apparently referring to the state

11   district court – denied him the opportunity to develop the claims in his *pro se* state petition.

12   He contends that "[t]he lack of opportunity to develop these claims further renders Petitioner's

13   new evidence exhausted."  Petitioner maintains that the state district court was inattentive,

14   negligent and/or otherwise denied him the opportunity to develop his claims when it denied

15   his requests for appointment of counsel and an evidentiary hearing, as well as when it denied

16   his petition as lacking sufficient specificity in a brief hearing allegedly without reading his 93-

17   page state petition.  Petitioner additionally relies on the State's failure to timely serve its

18   answer on him prior to the state district court's ruling.[6]

19        Such circumstances – denial of a request for counsel, denial of a request for an

20   evidentiary hearing, and/or an allegedly erroneous denial of specifically alleged claims instead

21   as conclusory – potentially have some relevance to a number of issues on federal review.

22   Such issues potentially include cause and prejudice to overcome a procedural default,

23   whether federal factual development should be allowed, and/or whether the state courts'

24   rejection of a claim on the merits was based upon an objectively unreasonable application of

25   clearly established federal law or an unreasonable determination of fact.

26   _____

27        [6]#28, at 5-7.  Petitioner focuses on the state district court's brief discussion of the petition from the
     bench and does not discuss the written findings, conclusions and order issued by the state district court. #20,
28   Ex. 47.

1    Such circumstances, however, do not exhaust claims, including claims based on

2    additional factual allegations that fundamentally alter the claim presented to the state courts.

3    If the state courts deny counsel, that does not mean that all claims and all factual

4    allegations that federal habeas counsel thereafter may present following investigation are

5    exhausted.  If federal habeas counsel presents a claim that was not fairly presented in the

6    state petition under the governing standards outlined herein, including those in *Vasquez v.*

7    *Hillery*,[7] then the petitioner will have to seek a stay to return to the state courts to exhaust the

8    unexhausted claim.  He of course can point to the prior denial of counsel in arguing for a stay

9    and, thereafter, potentially in seeking to overcome state procedural bars.

10    But a denial of appointment of counsel exhausts no claims.  Even following *Martinez*

11    *v. Ryan*, 132 S.Ct. 1309 (2012), there is no recognized constitutional right to appointed

12    counsel in state post-conviction proceedings.  A large proportion of state petitions are pursued

13    by inmates proceeding in proper person who are not trained in the law.  Congress certainly

14    was aware of that when it clearly stated in 28 U.S.C. § 2254(b)(1)(A) that a petition "shall not

15    be granted unless it appears that . . . the applicant has exhausted the remedies available in

16    the courts of the State."  The Supreme Court also certainly was aware that state petitions

17    typically were pursued *pro se* when it previously applied a jurisprudential exhaustion

18    requirement.  Neither Congress nor the Supreme Court have excepted cases from the

19    exhaustion requirement where a petitioner – hardly atypically – "pled indigence, incarceration,

20    lack of legal training, inability to investigate and limited access to a law library and legal

21    materials."[8]   If petitioner wishes to except *pro se* state petitions from the exhaustion

22    requirement, he will have to petition Congress to amend § 2254(b)(1)(A).   A denial of

23    appointment of counsel exhausts no claims.

24    If the state courts deny an evidentiary hearing, erroneously or not, that does not mean

25    that all claims and all factual allegations that federal habeas counsel thereafter may present

26

27    [7]See text, *supra*, at 1-2.

28    [8]#28, at 5.

-6-

are exhausted.  Petitioner, again, must seek a stay to return to the state courts to exhaust any unexhausted claims raised on federal habeas review; and he can point to the prior denial of an evidentiary hearing in arguing for a stay and to overcome procedural bars.

But a denial of an evidentiary hearing exhausts no claims.  Evidentiary hearings are not a vehicle for pleading claims but instead are a vehicle for proving claims that have been pled.  If the state district court erred under state law in denying an evidentiary hearing, that is not an issue of cognizance on federal habeas review.  Petitioner's argument, based on inapposite citation, that the state court denied his constitutional right to due process when it denied an evidentiary hearing in the state post-conviction proceeding also is not cognizable on federal review and, moreover, is strained at best.  The state court's denial of a request of an evidentiary hearing, again, may bear on other issues on federal habeas review, but a denial of a state evidentiary hearing exhausts no claims.

If the state court allegedly erroneously denies sufficiently specific claims instead as conclusory, that does not mean that all claims and all factual allegations that federal habeas counsel thereafter may present are exhausted.  Petitioner, again, must seek a stay to exhaust any unexhausted claims presented on federal habeas review.  Petitioner's speculation that he would have developed more facts and presented more claims if only the state district court had not dismissed his petition on its face exhausts no claims.  If petitioner presented a sufficiently specific claim that allegedly was erroneously rejected as conclusory, that allegedly erroneous ruling does not exhaust other claims that were not specifically alleged.  The alleged erroneous ruling does not exhaust any claims any more so than does a denial of counsel or an evidentiary hearing exhaust claims that petitioner did not allege in the state petition.  The petitioner – including a lay petitioner – must present the claim in the first instance.[9]

---

[9]Similarly, the State's alleged failure to timely serve its answer to the state petition does not exhaust any claims.  The petitioner must present his claims in the first instance in the state petition.  Any failure of the State to serve its answer to the petition has no bearing on what claims petitioner could or could not present in the petition.  The reply is not a proper vehicle for presenting claims in the first instance, and a petitioner does not need to respond to *defenses* to present *claims*.  Petitioner urges that he was denied the opportunity to respond to the State's answer to "point[] out that he needed counsel and investigative assistance to properly

(continued...)

1    In sum, petitioner's complaints regarding the manner in which the state district court

2    handled the claims that he did present does not establish exhaustion of claims that he did not.

3    The controlling inquiry turns upon whether petitioner presented the legal theories and

4    operative facts of the claims in the federal amended petition to the state courts in his state

5    post-conviction petition.  Any concerns that petitioner may have with how the state district

6    court handled the claims that he did present perhaps may have a bearing on other issues, but

7    they do not establish the exhaustion of claims that he did not present.

8    Similarly, petitioner's argument regarding the proceedings in the Supreme Court of

9    Nevada do not establish a basis for exhaustion of otherwise unexhausted claims.

10    According to petitioner, in *pro se* proceedings, the entire state court record is

11    transmitted to the state supreme court; and there is no briefing or argument on the state post-

12    conviction appeal by either party.  Petitioner asserts that he filed a motion for appointment of

13    counsel and a motion for a transcript of the post-conviction non-evidentiary hearing.  The

14    state supreme court denied both the motions.  Petitioner urges herein that he "diligently

15    attempted to develop evidence through his appeal to the Nevada Supreme Court."[10]

16    Petitioner's diligence argument, as discussed previously, is based upon a false legal

17    premise relying upon inapposite case law.  A petitioner does not demonstrate the exhaustion

18    of claims by showing  diligence in some sense in seeking relief in the various state courts.

19    Rather, under established law, he demonstrates exhaustion by showing that he presented the

20    legal theories and operative facts of the claims in the federal pleadings in the state courts.

21    The state supreme court's denial of petitioner's counsel motion did not exhaust any claim.

22    The state high court's denial of his motion for a transcript of a hearing did not exhaust any

23    claim.  Under petitioner's own argument, the state supreme court was presented with the

24    claims that he presented in his state petition.  If petitioner is of the view that the state courts

25    —————————————

26    [9](...continued)

27    support his claims." #28, at 5.  Petitioner did not need to file a reply to an answer to make such an argument, and, indeed, he in fact moved for appointment of counsel with the petition initially.

28    [10]#28, at 8.

should have proceeded differently in handling his petition, he can pursue such arguments in attempting to obtain a stay  and to overcome state procedural bars.  However, a state supreme court's denial of a motion for appointment of state post-conviction appellate counsel and of a motion for a transcript of a brief non-evidentiary post-conviction hearing does not lead to the exhaustion of any claims that the petitioner did not present in his state petition.

Petitioner otherwise suggests that he need present only the "substance" of his claims and that it is sufficient if he alerts the state courts that he is asserting "claims under the United States Constitution."[11]  Governing precedent requires more than what petitioner implies. General appeals to broad principles such as "due process" or "a fair trial" do not exhaust any specific federal constitutional claim.  *E.g., Castillo*, 399 F.3d at 999.  Rather, fair presentation requires that the petitioner present the state courts with both the operative facts and each federal legal theory upon which his claim is based.  *Id.*  Thus, merely alleging in the state courts that one is asserting "federal claims," "constitutional claims," or "claims under the United States Constitution" does not exhaust any specific federal constitutional claim.[12]

Finally, petitioner relies on the principle that *pro se* pleadings are to be liberally construed.  The Court most assuredly follows this principle.  However, neither state nor federal post-conviction pleading is notice pleading.  *See, e.g., Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (9th Cir. 2005).  Liberal construction cannot satisfy the exhaustion requirement where the petitioner has not presented the operative facts and legal theory of the federal claim to the state courts.  The Court liberally construes what is there, not adds what is not.

Accordingly, the Court turns at last to the apposite issue: Did petitioner present the operative facts and federal legal theory of the challenged claims to the state courts?

---

[11]#28, at 3.

[12]Petitioner selectively quotes from *Duncan v. Henry*, 513 U.S. 364 (1995), in support of this argument.  *Henry* instead fully supports the Court's statement in the text.  The Supreme Court's *per curiam* opinion reversing the decision below specifically and emphatically rejected the lower court holding that the petitioner was not required to expressly assert the specific federal due process claim at issue in order to exhaust the claim.  A petitioner must expressly invoke a specific federal constitutional guarantee to exhaust the claim, not merely present the nonspecific "substance" of a claim "under the United States Constitution."

***Ground 2(b)***

In Ground 2(b), petitioner alleges that he was denied effective assistance of trial counsel because counsel allegedly failed to review the "clerk's file" or investigate co-defendant Charma McCollum's mental health or criminal background.  The amended petition alleges that  McCollum was arrested for failure to appear in the criminal proceeding, that her counsel filed a motion explaining that she had missed the court date due to being hospitalized for mental health issues, that McCollum suffered from bipolar disorder for which lithium had been prescribed, that McCollum testified adversely to petitioner at trial, and that her testimony should have been impeached based upon her condition by suggesting that she suffered from a "neurological deficit" due to her condition that affected her perception and recollection.

Respondents contend that "[w]hile Aytch's pro per state habeas petition makes mention of several claims of error attributed to his counsel's efforts concerning his co-defendant, Respondents can find no mention of McCollum's mental health history or criminal background."[13]

Petitioner contends  that he exhausted federal Ground 2(b) within a claim in the state petition bearing the caption: "Defense Counsel Were Ineffective for Failing to File Pre-Trial Motion for Discovery."  Within the so-captioned claim, petitioner claimed "that defense counsel's failure to file a pretrial motion requesting discovery in this case was deficient performance." Within the ensuing seven pages of discussion of alleged deficient performance from failing to file a motion for discovery, petitioner quoted from Order ADKT No. 411, filed January 4, 2008, by the Supreme Court of Nevada setting forth standards for the representation of indigent criminal defendants.  He quoted the entirety of Standard 7, over nearly two pages.  The long quote included the following language from Standard 7(b), with underlined emphasis by petitioner: "(b) Counsel should: 1) obtain and examine all charging documents, pleadings, and discovery; . . . 5) request and secure discovery . . . ." #20, Ex. 37, at 1 & 3 (at electronic docketing pages 14 & 16).

_____

[13]#25, at 8.

1    Petitioner premises the exhaustion of Ground 2(b) upon his quotation of the word

2    "pleadings" from Standard 7(b), in his seven-page argument on a claim alleging that he was

3    denied effective assistance of counsel for failure to file a pretrial motion for discovery.

4    From 6this one word, petitioner thereupon urges that: (a) "[p]etitioner, locked in a jail

5    cell, lacking counsel or investigative resources, pled that counsel should have obtained and

6    examined all pleadings in the case, i.e., that trial counsel should have reviewed the clerk's

7    file;" (b) "[s]tatements describing co-defendant McCollum's mental health history, which

8    Petitioner failed to specifically exhaust, appear in a motion in the clerk's file;" and (c) "[t]he

9    court's refusal to grant Petitioner access to counsel to review the file *should exhaust the*

10   *material counsel would have found in the clerk's file.*"[14]

11   Petitioner draws from such premises the conclusion that if this Court were to find

12   Ground 2(b) unexhausted against this backdrop, "state writ courts could protect state

13   convictions by denying petitioner's resources, including access to the clerk's file from his own

14   case, and then complain in federal court that the petitioner failed to present the state courts

15   with that evidence, such as the motion from the clerk's file outlining McCollum's mental health

16   order."[15]

17   Petitioner has not presented this Court with a copy of a motion filed by petitioner during

18   the post-conviction proceedings in the state district court seeking copies of record materials

19

20        [14]#28, at 9-10 (emphasis added).

21        [15]#28, at 10.  The Court would note that state courts do not appear in federal habeas proceedings
     and "complain in federal court," about anything.  The state district court and the state respondents are not one
22   and the same.  The Supreme Court repeatedly has rejected arguments premised upon the view that state
     courts are actively seeking to deny individuals federal constitutional protections.  *See, e.g., Sawyer v. Smith*,
23   497 U.S. 227, 241 (1990)("State courts are coequal parts of our national judicial system and give serious
     attention to their responsibilities for enforcing the commands of the Constitution."); *Sumner v. Mata*, 449 U.S.
24   539, 549 (1981)("State judges as well as federal judges swear allegiance to the Constitution of the United
     States, and there is no reason to think that because of their frequent differences of opinions as to how that
25   document should be interpreted, all are not doing their mortal best to discharge their oath of office.").  Unless
     federal habeas counsel has a specific factual basis upon which to challenge the impartiality of the state
26   judiciary in enforcing federal constitutional guarantees -- over and above disagreement with a court's
     procedural and substantive rulings -- counsel should not expect an argument such as has been presented
27   here to find favor, much less be persuasive.  Counsel of course may make most any argument that counsel
     wishes within the bounds of Rule 11, but if the objective was to make persuasive argument to this Court, or
28   any federal court, it has not been achieved in this regard.

-11-

that was denied by the court.  He has not presented this Court with a copy of an order by the state district court "denying [petitioner] . . . access to the clerk's file from his own case."

Rather, petitioner has sought to transmute an order denying appointment of counsel into an order by a state district court, apparently bent on protecting a state conviction, "denying [petitioner] . . . access to the clerk's file from his own case."

Nothing in the form motion filed by petitioner in the state district court stated that petitioner could not obtain relevant copies of state court record materials unless he was appointed counsel.[16]  Nothing in the record reflects that petitioner attempted to obtain copies of state court record materials without counsel but was unable to do so.  In short, there is nothing in the record remotely supporting petitioner's suggestion that the state district court, seeking to protect a conviction, "den[ied petitioner] . . . access to the clerk's file from his own case."

Petitioner instead is relying on the state district court's order denying a motion *for appointment of counsel*, not a motion for "access to the clerk's file from his own case." Petitioner thus necessarily – and indeed in actual fact -- argues that if a state district court denies a motion for appointment of post-conviction counsel and the petitioner conclusorily alleges in his state petition that trial counsel had a general obligation to review the criminal case file, then he has exhausted any and all claims of ineffective assistance of trial counsel that federal habeas counsel thereafter may glean from a review of the criminal case file.

That is a meritless argument that, as discussed in the preceding section, is based upon false legal premises drawn from inapposite case law.  The exhaustion requirement, as applied both by longstanding Supreme Court precedent and express Congressional enactment, applies fully in *pro se* cases.  If a state court denies a state petition without appointing

---

[16]See #20, Ex. 40.  The form unitary motion for appointment of counsel and request for an evidentiary hearing that petitioner filed in the state district court is substantially similar to the motion typically filed by inmates in federal habeas proceedings.  Indeed, it may well be exactly similar to the motion typically filed in federal court.  This Court never has construed such a motion as a motion for production of state court record materials.  This Court never has construed such a motion as *sub silentio* alleging that petitioner could obtain copies of state court record materials only if counsel was appointed.

counsel, that does not thereafter provide federal habeas counsel *carte blanche* to pursue any and all ineffective-assistance claims that state post-conviction counsel conceivably might have pursued based upon the state court record, free and clear of the exhaustion requirement.[17]

Rather, the exhaustion doctrine codified in § 2254(b)(1)(A) requires that the petitioner – including a *pro se* petitioner – have presented the state courts with both the operative facts and the federal legal theory upon which his federal habeas claim is based.  Petitioner's quotation of a standard from a state supreme court general order stating that defense counsel "should . . . obtain and examine all . . . pleadings" did not present the operative facts of Ground 2(b) to the state courts.  That claim alleges for the first time, *inter alia*, that defense counsel failed to investigate the alleged mental health and criminal background of his co-defendant based upon her bipolar disorder and failed to impeach her testimony with the alleged effects of that mood disorder upon her perception and recollection.

Petitioner further contends that Ground 2(b) does not fundamentally alter a claim presented in the state petition.

On this argument, petitioner shifts to a different portion of the petition where he maintains that he "argued that trial counsel unreasonably failed to cross-examine McCollum."[18]  Petitioner made no claim in the cited portion of the state petition that trial counsel failed to cross-examine McCollum adequately.  Rather, petitioner was arguing – still on the claim that trial counsel was ineffective for failing to file a motion for discovery – that the purportedly weak evidence of guilt made it more likely that the alleged deficient performance in not filing a motion for discovery resulted in prejudice.  In that vein, he argued, *inter alia*, that "the only truly damaging testimony . . . came from the codefendant, who no only recanted her story to the police concerning the events in this case, but who committed perjury at trial"

---

[17]As discussed in the preceding section, the denial of counsel may impact other issues, such as the application of the procedural default doctrine.  But that is another issue perhaps to be addressed at a different juncture, following exhaustion of the claim in the first instance.

[18]#28, at 10.  He urges that the "state writ court took no notice of these arguments." #28, at 10 n.1.  Regardless of what the state district court allegedly noticed or did not notice, the question at issue is whether *petitioner* fairly presented *Ground 2(b)* to the state courts.  As discussed in the text, he did not.

1   because she testified that Aytch threw the victim's things out a window in the van that

2   petitioner maintains was completely taped up.  He maintained that there was no physical

3   evidence or eyewitness evidence "[o]ther than the codefendant's arrest statement to the

4   police and her testimony at trial."[19]

5          Nothing in the cited passage from the state petition argued that trial counsel

6   unreasonably failed to cross-examine McCollum.  An argument based upon such a

7   mischaracterization of the record carries no force.

8          Further, none of the factual circumstances referred to in the cited passage – in truth

9   alleged in arguing that the evidence of guilt was weak in regard to the prejudice prong of

10  *Strickland*[20] – presented operative facts regarding McCollum's alleged mental health and

11  criminal background, as to any context.  The cited passage presented neither an argument

12  that trial counsel unreasonably failed to cross-examine McCollum nor an argument that he

13  failed to do so based upon her alleged mental health and criminal background.

14         The Court has no difficulty holding that Ground 2(b) fundamentally alters the claim

15  argued in the cited passage for purposes of the rule in *Vasquez*, given that no claim

16  corresponding to Ground 2(b) was argued in the passage in the first instance.  Petitioner is

17  not merely presenting additional facts in support of the claim presented to the state courts;

18  he is presenting an entirely new claim that was not presented in the cited passage.

19         Petitioner further suggests that the Supreme Court of Nevada ruled on the merits of

20  the claim.  He contends that the state supreme court "made robust findings that Petitioner did

21  not show prejudice from trial counsel's ineffective cross-examination of McCollum" and

22  "recognized and resolved the factual and legal substance of the claim[] . . . that trial counsel

23  failed to investigate and properly cross-examine the co-defendant."[21]

24         In pertinent part, the Supreme Court of Nevada held as follows:

25

---

26  [19]#20, Ex. 37, at 9-11 (at electronic docketing pages 22-24).

27  [20]*Strickland v. Washington,* 466 U.S. 668 (1984).

28  [21]#28, at 10.

-14-

1
2
3
4
5
6

> Sixth, appellant claimed that trial counsel was ineffective for failing to challenge his co-defendant's recanted statement at arrest . . . and failing to properly impeach his co-defendant. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced.  Appellant failed to allege how counsel should have challenged the arrest statement. . . . .  Finally, trial counsel did use appellant's co-defendant's statement as impeachment evidence at trial *and appellant failed to demonstrate how trial counsel could have impeached her more effectively*.  Therefore, the district court did not err in denying this claim.

7    #20, Ex. 50, at 4 (emphasis added).

8    The "robust findings" to which petitioner refers did not constitute a holding on the merits

9    of the claim in Ground 2(b).  The state supreme court rejected a claim based upon counsel's

10   alleged failure to impeach McCollum's testimony *with her prior statement* and held further that

11   Aytch otherwise *had failed to demonstrate how trial counsel could have impeached her more*

12   *effectively*.  A holding rejecting an essentially conclusory claim that counsel failed to properly

13   impeach the co-defendant (over and above a distinct claim that he should have impeached

14   the co-defendant with her statement) – based specifically upon petitioner's failure to articulate

15   how counsel should have impeached his co-defendant – did not constitute a ruling on the

16   merits of the claim raised in Ground 2(b) that counsel should have impeached McCollum with

17   her prior alleged mental health and criminal background.  No claim corresponding to Ground

18   2(b) was presented to the state courts.

19   Ground 2(b) therefore is not exhausted.

20   ***Ground 2(c)***

21   In Ground 2(c), petitioner alleges that he was denied effective assistance of trial

22   counsel because counsel allegedly failed, *inter alia*, to file a motion to sever Aytch's trial from

23   that of his co-defendant McCollum.  The amended petition alleges that Aytch could have

24   satisfied the standard for severance under Nevada state law by demonstrating prejudice, that

25   he was prejudiced because McCollum lacked significant criminal history (the somewhat

26   contrary claim in Ground 2(b) apparently notwithstanding) and would probably testify such that

27   his likely exercise of his right to not testify allegedly would be prejudiced, that her bipolar

28   mood disorder allegedly made her testimony somewhat unpredictable, and that faced with

1    such alleged prejudice the trial court allegedly should have granted a motion to sever.

2    Petitioner further alleges that he was prejudice because he likely would not have faced

3    McCollum's testimony in a severed trial, as she would have had no incentive to testify whether

4    she had pending charges or instead had been acquitted and risked new charges by exposing

5    new facts. Petitioner maintains that McCollum provided the only evidence that he personally

6    entered the victim's apartment and stole her property.  He contends that, absent her

7    testimony, there was a reasonable probability of a different outcome at his trial.

8         Respondents acknowledge that Aytch presented a claim based upon trial counsel's

9    failure to move to sever.  Respondents contend, however, that the claim in Ground 2(c) is not

10   exhausted to the extent that Aytch alleges in federal court "that as trial approached, it should

11   have been apparent that the co-defendant would testify because she lacked significant

12   criminal history, and that her mental illness made her testimony unpredictable."[22]

13        The Court is not persuaded on the argument made.

14        In his state petition, Aytch presented an ineffective-assistance claim based upon

15   counsel's failure to move to sever that spanned over six pages.  Petitioner alleged, *inter alia*,

16   that counsel should have moved to sever because: (a) McCollum's statement clearly

17   inculpated Aytch; (b) the recanted arrest statement admitted at his trial was inherently suspect

18   because McCollum was saying whatever she could to avoid arrest; (c) counsel should have

19   foreseen that manifest or undue prejudice would arise from a joint trial; (d) counsel should

20   have foreseen that mutual exclusivity or antagonism existed between the positions of the

21   defendants, with McCollum having every incentive to inculpate Aytch and do the prosecution's

22   job for them; and (e) counsel should have known from the discovery in the case that a joint

23   trial with McCollum presented a serious risk of compromising his right to a fair trial.  Petitioner

24   sought to establish prejudice based upon, *inter alia*, the allegation that the State relied

25   primarily on McCollum's statement and testimony to secure his conviction.  #20, Ex. 37, at

26   42-48 (at electronic docketing pages 55-61).

27   _____

28        [22]#25, at 8-9.

-16-

The Court is not persuaded that the additional allegations in the federal petition (a) that it should have been apparent that McCollum would testify as trial approached because she lacked a significant criminal history and (b) that her alleged mental illness made her testimony even more unpredictable fundamentally altered the extensively-articulated claim in the state petition.  As to this claim, the Court is persuaded that petitioner merely is presenting additional facts in support of the extensive claim presented to the state courts.

Ground 2(c) therefore is exhausted in full.

**Ground 2(f)**

In Ground 2(f), petitioner alleges that he was denied effective assistance of trial counsel because counsel allegedly failed to object to the State's amendment of the charging document on the day of the trial adding a second count of grand larceny.  According to the amended petition, the original grand larceny count charged Aytch with the theft of keys and a cell phone; and the new count charged him also with theft of some clothing, a telescope, and a suitcase.  Ground 2(f) appears to allege both a claim of ineffective assistance of trial counsel in failing to object to the amendment as well as an underlying independent substantive claim of trial court error in allowing the amendment.

Respondents contend: (a) that the ineffective-assistance claim is not exhausted because petitioner alleged in the state petition instead that counsel was ineffective for failing to request a continuance to investigate the new charge; and (b) that the independent substantive claim of trial court error was not exhausted.[23]

The ineffective-assistance claim is exhausted.  Regardless of what was alleged in the state petition, the state supreme court considered the merits of the ineffective-assistance claim presented in Ground 2(f).  The state high court read Aytch's petition as claiming "that trial counsel was ineffective for *failing to object to* or request a continuance when the State filed an amended information."  #20, Ex. 50, at 3-4 (emphasis added).  The court's rejection of the claim as so described on the merits exhausted the ineffective-assistance claim.

---

[23]#25, at 9-10.

The underlying substantive claim, to the extent presented in the federal amended petition, is not exhausted. The exhaustion of a claim of ineffective assistance of counsel for failing to object to an alleged error does not exhaust an independent substantive claim based upon the error. *See, e.g., Rose*, 395 F.3d at 1111-12; *Kelly v. Small*, 315 F.3d 1063, 1068 & n.2 (9th Cir. 2003), *overruled on other grounds*, *Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).[24]

The claim of ineffective-assistance of counsel in Ground 2(f) therefore is exhausted but any independent substantive claim of trial court error alleged therein is not.

### Ground 2(g)

In Ground 2(g), petitioner alleges that he was denied effective assistance of trial counsel because counsel allegedly failed to challenge the victim's testimony as to the value of the stolen items. The amended petition alleges that: (a) the victim, Tera Pelaccio, testified that most of the clothing taken from her home consisted of several evening gowns that cost between $250 to $300 each; (b) Pelaccio testified that one of the stolen gowns was not recovered; (c) the State made a presentation during closing reflecting that two of the gowns were recovered but damaged and three were recovered undamaged; and (d) a picture taken of the inside of the van at the time of petitioner's arrest showed "some clothes" laying in the back of the van as well as a dry cleaning receipt listing clothing items other than dresses. Petitioner maintains that trial counsel should questioned Pelaccio about the omission of dresses on the dry-cleaning tag that – purportedly – "lists the clothes found in the van" and further about her request for nearly $1500 in restitution attributable to the dresses. He alleges

---

[24]Petitioner argued in the opposition that his state court pleadings should be construed liberally and that he presented the "substance" of the claim in his state petition, apparently in arguing that the ineffective-assistance claim was exhausted. These arguments in any event do not establish the exhaustion of the substantive claim. Petitioner did not present both the operative facts and the legal theory of the substantive claim in his state petition. See #20, Ex. 37, at 29-34 (electronic docketing pages 42-47). As discussed with regard to petitioner's general arguments, exhaustion does not turn upon whether a petitioner presented the amorphous "substance" of a claim. Rather, he must present the state courts with each legal theory upon which his federal claim is based. A claim based upon alleged ineffective assistance of counsel for failing to object to an error is not based upon the same legal theory as an independent substantive claim of trial court error. *E.g., Rose, supra; Kelly, supra.*

1    that counsel thereby "failed to point out that either the dresses never existed and Pelaccio

2    claimed them solely to exaggerate her claim for compensation or, if the dresses existed and

3    were stolen, then someone other than Petitioner took them and Petitioner is not liable for

4    burglary or grand larceny."  Ground 2(g) alleges that, accordingly, the jury would have been

5    given reason to doubt Pelaccio's veracity and reliability, reasonably probably impacting the

6    outcome at trial.[25]

7         Respondents contend that no such claim of ineffective assistance of trial counsel was

8    exhausted, as petitioner presented claims based instead only upon counsel's failure to

9    investigate the value of the property and to interview the victim regarding the stolen property.

10        In response, petitioner does not point to any portion of the state post-conviction petition

11   overlooked by respondents.  Petitioner instead urges that "Respondents ignore the *direct*

12   *appeal briefing*, wherein Petitioner alleged that the state 'failed to prove the value of the

13   property allegedly stolen.'" He alleges that "[b]oth the claim in the direct appeal briefing and

14   the claim in the [federal] Amended Petition allege that had trial counsel properly challenged

15   the complainant's testimony on value with the fair market value, the state would not have

16   been able to prove either the cell phone or the other allegedly stolen items could be valued

17   at $250.00 or more."[26]

18        This strained argument is without any conceivable merit.  A claim challenging the

19   sufficiency of the evidence on direct appeal does not exhaust a claim of ineffective assistance

20   of trial counsel, which typically may not even be considered on direct appeal.  Moreover, on

21   direct appeal, Aytch contended that the evidence was insufficient because the State did not

22   present testimony of the fair market value of the stolen items and relied only upon the

23

24        [25]In describing the allegations of the amended petition, the Court emphasizes that -- as with any such
     description -- it does not thereby reflect any implied or tacit agreement with the description in Ground 2(g) of
25   the charges, the relationship of specific stolen items to a specific charge or charges, or the absence of other
     potential explanations reflected in the trial evidence for items -- particularly items that were not recovered --
26   not being in the van, in the picture taken, and/or on the dry cleaning receipt.  Based on what the Court has
     learned about the case so far in reviewing exhaustion and other issues, it would appear that the purported
27   inferences suggested in Ground 2(g) are hardly compelled.

28        [26]#28, at 11 (emphasis added).

                                                    -19-

testimony of the victim as to their value.[27]   None of the fundamentally different operative facts in Ground 2(g) outlined above – presented in federal court in an effort to suggest variously that the dresses never existed, that Pelaccio was lying, and/or that someone else stole the dresses – remotely were presented on direct appeal, or, indeed, otherwise in the state post-conviction petition.[28] However, even if the direct appeal claim challenging the sufficiency of the evidence had involved the same operative facts, it would not have exhausted any claim of ineffective assistance of trial counsel.   A petitioner must present the same operative facts and the same legal theory *together at the same in the same proceeding* to fairly present a claim, not in disjointed bits and pieces spread across proceedings years apart.

Petitioner presented neither the operative facts nor the federal legal theory of Ground 2(g) to the state courts.  His argument that he instead needed only to present the "substance" of the claim in this manner is based upon a mischaracterization of the governing legal standard and would be of dubious validity even under such an amorphous standard.  Ground 2(g) is a completely new claim of ineffective assistance of trial counsel presented for the first time on federal habeas review, both as to its legal theory and operative facts.

Ground 2(g) is not exhausted.

### Ground 2(h)(ii)

In Ground 2(h)(ii), petitioner alleges, *inter alia*, that he was denied effective assistance of trial counsel because counsel failed to object to a jury instruction on flight.

Respondents contend that Ground 2(h)(ii) is unexhausted because petitioner presented the state courts with a claim only of ineffective assistance of appellate counsel, not trial counsel, with regard to the giving of a flight instruction.

Petitioner seeks to brush aside respondents' position on this and a number of other grounds as attempting to impose a hyper-technical pleading requirement.  However, the argument instead is grounded in bedrock exhaustion law.  Petitioner must present each

---

[27]#20, Ex. 31, at 12-15.

[28]See #20, Ex. 37, at 12-24 (at electronic docketing pages 25-37).

federal legal theory upon which he seeks federal habeas relief to the state courts, and exhaustion of a claim based upon a legal theory of ineffective assistance of appellate counsel does not also exhaust a claim based upon a legal theory of ineffective assistance of trial counsel. *See, e.g., Castillo*, 399 F.3d at 999; *cf. Baldwin v. Reese*, 541 U.S. 27 (2004)(petitioner did not exhaust a federal claim of ineffective assistance of appellate counsel under the circumstances presented although petitioner had exhausted a claim of ineffective assistance of trial counsel).

Petitioner further urges that the state supreme court "ruled on the merits of the underlying claim, finding that Petitioner failed to prove the issue had a reasonable probability of success."[29]   Petitioner thus appears to argue that Ground 2(h)(ii) also presents an underlying independent substantive claim and that the substantive claim is exhausted.  As discussed above, the exhaustion of a claim of ineffective assistance of counsel for failing to challenge an alleged error does not exhaust an independent substantive claim based upon the error. *See, e.g., Rose*, *supra*; *Kelly, supra*.  The state supreme court's reference to the underlying substantive claim in rejecting an ineffective-assistance claim does not constitute an adjudication on the merits of the substantive claim.  Otherwise, the rejection of every ineffective-assistance claim for failure to challenge alleged trial error would entail an adjudication of a substantive claim – a claim that instead very possibly would have been held to be procedurally defaulted by the state courts if those courts had considered the substantive claim also to be fairly presented.

Neither the claim of ineffective assistance of trial counsel nor any *arguendo* substantive claim presented in Ground 2(h)(ii) was exhausted.

Ground 2(h)(ii) is not exhausted.[30]

---

[29]#28, at 12.

[30]Ground 2(h)(ii) also includes allegations of ineffective assistance of appellate counsel, but these allegations are alleged for the purpose of incorporation by reference into the stand-alone claims of ineffective assistance of appellate counsel that petitioner presents in Ground 5.  A dismissal of Ground 2(h)(ii) does not impact the incorporation of these allegations of ineffective assistance of appellate counsel into Ground 5.

(continued...)

***Ground 2(h)(iii)***

In Ground 2(h)(iii), petitioner alleges that he was denied effective assistance of trial counsel with regard to the habitual criminal adjudication.  The amended petition alleges that: (a) Nevada state law and the Eighth Amendment do not permit a habitual criminal adjudication where such an adjudication would not serve the ends of justice; (b) a habitual criminal adjudication did not serve the ends of justice because five of the six convictions presented by the State resulted from allegedly minor incidents, led to the minor sentences, and/or were remote in time, from 13 to 36 years prior to the instant offenses; and (c) Aytch was denied due process of law because a 1980 armed robbery conviction allegedly was obtained without petitioner being represented by counsel.  Petitioner alleges that trial counsel failed to examine the documents presented by the State and point out to the sentencing court that the substance of the prior convictions did not support a habitual criminal adjudication, failed to bring the allegedly uncounselled nature of the 1980 conviction to the attention of the sentencing court and keep the court from relying on the conviction, failed to review the convictions, failed to discuss the convictions with petitioner, and failed to request a hearing on the prior convictions.  He alleges that if trial counsel had understood the convictions and argued their substance to the sentencing court there is a reasonable probability that the court would not have adjudicated petitioner a habitual criminal.

Respondents acknowledge that petitioner presented a claim in his state petition "regarding the admissibility and validity of his prior conviction and whether trial counsel was ineffective for not objecting to their use."  Respondents contend, however, that Ground 2(h)(iii) is unexhausted because petitioner "did not argue in his state petition that the substance of those convictions did not warrant imposition of habitual treatment."[31]

/ / / /

---

[30](...continued)
However, Ground 2(h)(ii), *qua* a separate stand-alone claim, must be dismissed in full to avoid dismissal of the entire petition, absent a grant of other appropriate relief.

[31]#25, at 10.

1    The Court is not persuaded on the argument presented.  Petitioner did in fact allege

2    in his state petition that the substance of certain convictions did not warrant imposition of

3    habitual criminal treatment, albeit not as extensively as argued by federal habeas counsel.

4    As discussed below, the expanded argument on federal habeas review does not

5    fundamentally alter the claim presented to the state courts.

6    In his state petition, Aytch alleged, *inter alia*, that: (a) Nevada law authorized a judge

7    to dismiss a habitual criminal adjudication where the prior offenses were stale or trivial or

8    where a habitual criminal adjudication would not serve the interests of justice;[32] (b) two of the

9    convictions were both remote in time and for nonviolent offenses and trial counsel had a duty

10   to point these facts out to the court;[33] and (c) he was denied due process of law because the

11   1980 armed robbery conviction allegedly was obtained without petitioner being represented

12   by counsel and trial counsel were ineffective for failing to point this out.[34]  He alleged that trial

13   counsel failed to review the prior judgments of conviction and conduct an investigation

14   sufficient to make an informed judgment;[35] failed to make any comments concerning the six

15   prior judgments of convictions,[36] and failed to raise any objections to the admission of the six

16    judgments of conviction.[37]  He alleged that there was a reasonable probability of a different

17   outcome if counsel had done so.[38]

18   The state supreme court held, *inter alia*, that Aytch had failed to demonstrate that any

19   of the convictions were infirm but that "even assuming that three out of the six convictions

20

21   [32]#20, Ex. 37, at handwritten pages 78, lines 20-28; & 81, lines 22-28 (within electronic docketing

22   pages 88-98).  See also *id.*, at 76 (describing the 6 convictions).

23   [33]*Id.*, at 78, lines 14-28; 79, lines 1-9, & 81, lines 22-28;& 82, lines 1-14.

24   [34]*Id.*, at 77, lines 10-18; 79, lines 22-28; & 80, lines 1-13

25   [35]*Id.*, at 82, lines 14-15; & 84, lines 17-29.

26   [36]*Id.*, at 77, lines 1-3.

27   [37]*Id.*, at 76, lines 20-28.

28   [38]*Id.*, at 85, lines 1-6.

1  entered by the State were flawed as appellant claimed, appellant still had three convictions

2  that qualified him for large habitual criminal treatment."[39]   This Court would have more

3  difficulty finding exhaustion in a case where a petitioner attacked the *validity* of only three of

4  six prior convictions in state court but challenged the validity of all six convictions on federal

5  habeas review.  The claim as to which respondents challenge exhaustion, however, involves

6  a claim that counsel failed to investigate and challenge the *suitability* of otherwise *arguendo*

7  (on that particular argument) valid prior convictions for a discretionary habitual criminal

8  adjudication.  While the question is a close one, the Court holds that petitioner has not

9  fundamentally altered the state court claim.

10          Ground 2(h)(iii) is exhausted.

11      ***Grounds 3 & 4***

12          Grounds 3 and 4 present substantive claims of trial court error.  As discussed above,

13  the exhaustion of a claim of ineffective assistance of counsel for failing to challenge an

14  alleged error does not exhaust a substantive claim based upon the error.  *See, e.g., Rose*,

15  *supra*; *Kelly, supra.*  Aytch contends, however, that, although the related claims in the state

16  petition were "labeled" as ineffective-assistance claims, they presented substantive claims.

17  Following review of the cited portions of the state petition, the Court is not persuaded.[40]  Aytch

18  discussed the alleged trial court errors *to show that to which counsel should have objected*

19  in the course of claims extensively alleging deficient performance and prejudice under

20  *Strickland*.   Petitioner did not present substantive claims that merely were labeled as

21  ineffective-assistance claims.

22          Grounds 3 and 4 are not exhausted.

23      ***Ground 5***

24          In Ground 5, petitioner alleges that he was denied effective assistance of appellate

25  counsel when counsel failed to raise a number of issues, including, *inter alia*, that "the trial

27      [39]#20, Ex. 50, at 6-7.

28      [40]See #20, Ex. 37, at 66-85 (at electronic docketing pages 79-98).

1    court erred in relying on impalpable and highly suspicious documents purporting to be

2    Petitioner's prior convictions."  Petitioner incorporates prior relevant grounds as if set forth

3    fully in Ground 5.  In this instance, he appears to incorporate the allegations of the substantive

4    claim in Ground 4 setting forth the alleged defects in the prior convictions.

5        Respondents contend that this portion of Ground 5 is unexhausted because "[i]n state

6    court Aytch complained that the appellate counsel failed to raise the issue that the sentencing

7    judge did not make an independent determination of constitutional validity, and that several

8    of the convictions were constitutionally invalid on their face."[41]

9        In the state petition, petitioner alleged:

10            The meritorious issues Aytch argues that should have
             been raised on direct appeal are:

11

12            1) that the district court erred by not making an
             independent determination as to the constitutional validity of the
             prior judgment of convictions used to adjudicate Aytch as an [sic]

13           habitual criminal.  Several of the prior judgment of convictions
             entered into evidence and used to adjudicate Aytch an [sic]

14           habitual criminal were constitutionally invalid on its [sic] face.

15   #20, Ex. 37 at 92 (at electronic docketing page 106).

16        The distinction between the state and federal claims would appear to constitute more

17   semantics than substance.  At its core, the claim on both state and federal review appears

18   to be that the trial court should not have accepted the prior convictions at face value and that

19   there were issues as to the validity of a number of the convictions.  This is an instance where

20   the Court must construe liberally language that actually is in the *pro se* state petition.  The

21   difference in language used by the *pro se* lay petitioner on the one hand and by experienced

22   federal habeas counsel on the other does not render the claim unexhausted.

23        Ground 5 is exhausted in full.

24        **Ground 6**

25        In Ground 6, petitioner alleges that he was denied due process of law because he was

26   denied an alleged federal constitutional right to state post-conviction counsel to raise claims

27

28        [41]#25, at 11-12.

of ineffective assistance of trial counsel.  The claim was filed in anticipation of, *inter alia*, the Supreme Court's subsequent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

Petitioner essentially does not contest that the claim is unexhausted.  However, he "reserves the right to argue the absence of assistance of post-conviction counsel during state habeas litigation as cause to excuse any procedural default of his claims."[42]  That is all well and good.  However, the Court will dismiss the petition as a mixed petition if petitioner does not dismiss his unexhausted claims – including this claim as an independent claim still presented by the pleadings -- or obtain other appropriate relief.  Particularly given that the claim does not appear to be cognizable on federal habeas review as an independent substantive claim in the first instance, even following *Martinez*, it would appear that the time of both the parties and the Court would be better expended elsewhere.  Meanwhile, the entire petition is subject to dismissal as a mixed petition due to the continuing presence of this unexhausted claim.

Ground 6 is not exhausted.

**Ground 7**

In Ground 7, petitioner alleges that he was denied due process of law due to cumulative error.

Respondents note that petitioner raised a claim of cumulative error only on direct appeal.  Respondents contend that the ground is unexhausted to the extent that petitioner seeks to base the cumulative-error claim also on claims in the federal amended petition raised on state post-conviction review.

Petitioner contends that he exhausted a claim of cumulative error "arising from the varying acts of ineffective assistance of counsel" in the state post-conviction petition when: (a) he referred to case law holding that prejudice may result from the cumulative effect of multiple deficiencies; and (b) he referred to multiple alleged deficiencies by counsel at a time in his allegations.  See # 28, at 14.

---

[42]#28, at 13.

The Court is not persuaded.  Citation of case law suggesting that a court, in applying the *Strickland* analysis to ineffective-assistance claims, should consider prejudice from multiple deficiencies by counsel in combination rather than in isolation does not present a cumulative error claim.  Discussing multiple deficiencies together in a petition also does not present a cumulative error claim.  Petitioner did not present a claim of cumulative error on state post-conviction review but instead presented a number of different groupings of claims of ineffective assistance of counsel.   Moreover, petitioner did not present a claim of cumulative error based upon the combination of alleged errors presented on both direct appeal and state post-conviction review.

Ground 7 is exhausted only to the extent that petitioner alleges cumulative error based on the errors raised on direct appeal.

IT THEREFORE IS ORDERED that respondents' motion (#25) to dismiss is GRANTED IN PART, such that the Court holds that the following claims (the "unexhausted claims") are not exhausted:

        (a)    Ground 2(b) in its entirety;

        (b)    Ground 2(f) to the extent that petitioner presents an independent substantive claim of trial court error;

        (c)    Grounds 2(g), 2(h)(ii), 3, 4 and 6 in their entirety; and

        (d)    Ground 7 to the extent that petitioner presents claims of cumulative error based on any alleged errors other than those raised on direct appeal.

IT FURTHER IS ORDERED  that petitioner shall have **thirty (30) days** from entry of this order within which to file a motion for dismissal without prejudice of the entire petition or for partial dismissal only of the unexhausted claims, which shall be expressly referred to as specified in the subparagraphs (a) through (d) above verbatim, and/or for other appropriate relief.  Any motion filed must contain or be accompanied by, either contemporaneously or via a document filed within **ten (10) days** thereafter, a signed declaration by petitioner under

penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested from the Court.   The entire petition will be dismissed without prejudice for lack of complete exhaustion if a motion and/or the verification is not timely filed.

IT FURTHER IS ORDERED that the standard response and reply times under Local Rule LR 7-2 shall apply to any such motion filed, except that the response time shall run from the filing of the verification rather than the motion itself.

DATED: March 29, 2013.


_____
ROBERT C. JONES
Chief United States District Judge

-28-