# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARTINEZ S. AYTCH,

    Petitioner,

vs.

ROBERT LEGRAND, *et al.*,

    Respondents.

Case No. 3:10-cv-00767-RCJ-WGC

**ORDER**

On January 9, 2015, the court granted petitioner's motion to reopen case (ECF #49). On January 28, 2015, respondents filed a second motion to dismiss (ECF #51). Petitioner, through counsel, opposed (ECF #56), and respondents replied (ECF #63).

**I. Procedural History and Background**

Petitioner Martinez S. Aytch ("petitioner") and his co-defendant were tried on several burglary and larceny charges (exhibits to first amended petition, ECF #16, exhs. 14-18).[1] His co-defendant was found not guilty on all counts. Petitioner was found guilty of two counts of grand larceny, one count of burglary, and was found not guilty of conspiracy. On March 12, 2008, the state district court adjudicated petitioner a habitual criminal and sentenced him to three concurrent life sentences with parole eligibility after ten years. Exh. 24. Judgment of conviction was entered on March 18, 2008.

---

[1] All exhibits referenced in this order are exhibits to the first amended petition, ECF #16, and are found at ECF #s 17-21.

Exh. 25. The Nevada Supreme Court affirmed his conviction on May 5, 2009, and remittitur issued on June 10, 2009. Exhs 34, 35.

Petitioner's filed a pro per state postconviction habeas petition on July 1, 2009. Exh. 37. The Nevada Supreme Court affirmed the state district court's denial of the petition on September 10, 2010, and remittitur issued on October 8, 2010. Exhs. 50, 51.

Petitioner dispatched his federal petition for writ of habeas corpus on December 8, 2010 (ECF #4). Through counsel, petitioner filed an amended petition on September 27, 2011 (ECF #s 3, 16). This court determined that several grounds were unexhausted and granted petitioner's motion for stay (ECF #s 33, 35, 45).

Petitioner subsequently filed a second state postconviction on March 18, 2014. Exh. 70. The state district court dismissed it as successive and untimely, the Nevada Supreme Court affirmed, and remittitur issued on October 15, 2014. Exhs. 80, 83, 84. Respondents argue that several grounds should be dismissed as procedurally barred.

**II. Respondents' Motion to Dismiss**

Respondents argue that grounds 2(b), 2(g), 2(h)(ii), 2(f), 3 and 4 are procedurally defaulted because the state courts declined to entertain the merits of the claims finding them untimely, successive and an abuse of the writ. The parties acknowledge, and the state-court proceedings reflect, that the state courts imposed the procedural bars articulated in NRS 34.726 and NRS 34.810 and refused to consider the merits of these claims. Exhs. 80, 83.

**A. Procedural Default**

Generally, "a state prisoner's failure to comply with the state's procedural requirements in presenting his claims bar him or her from obtaining a writ of habeas corpus in federal court under the adequate and independent state ground doctrine." *Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir.2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546 (1991)). A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The *Coleman* Court stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir.2003).

For the procedural default doctrine to apply, "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir.1996).

**B. Discussion**

NRS 34.726(1); 34.810(1)(b); and 34.810(3), the state law bases given for denying petitioner's claims, have been held to be independent and adequate state procedural rules that will bar federal review. *See Vang v. Nevada*, 329 F.3d 1069, 1074–75 (9th Cir.2003); *Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001); *Bargas v. Burns*, 179 F.3d 1207 (9th Cir.1999). Thus, their application to the second state postconviction petition was effective to procedurally default them in the state courts.

To overcome a procedural default, a petitioner must establish either (1) "cause for the default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Cause to excuse a procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. *Coleman*, 501 U.S. at, 753; *Carrier*, 477 U.S. at 488. The prejudice that is required as part of the showing of cause and prejudice to overcome a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir.1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.1984).

**Grounds 2(b), 2(g), and 2(h)(ii)**

Petitioner argues that the state procedural default should not bar his federal claims because he can show cause and prejudice to excuse the default. He asserts that the denial of counsel in his first state post-conviction proceedings provides cause for his failure to raise the defaulted claims now presented in three subparts of ground 2. As ground 2(b), petitioner alleges that trial counsel failed to review the clerk's file or investigate co-defendant Charma McCollum's mental health or criminal background (ECF #19, pp. 9-11). In ground 2(g), petitioner claims that trial counsel failed to challenge the complainant's testimony regarding the value of the items allegedly stolen. *Id*. at 14-15. And in ground 2(h)(ii), petitioner contends that trial counsel failed to object to an improper flight instruction. *Id*. at 17-18. Petitioner relies on the "equitable rule" established in *Martinez v. Ryan*, 132 S.Ct 1309 (2012).

Under the holding of *Martinez*, failure of a court to appoint counsel, or the ineffective assistance of counsel in a state postconviction proceeding may establish cause to overcome a procedural default in specific, narrowly defined circumstances. Although reaffirming the general holding of *Coleman*, "that an attorney's negligence in a postconviction proceedings does not establish cause," in all other circumstances, the United States Supreme Court determined that a narrowly carved exception—an equitable rule–must be established. *Martinez*, 132 S.Ct. at 1320 (quoting *Coleman*, 501 U.S. at 753) (emphasis added).

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Martinez*, 132 S.Ct. at 1320. The Court specifically determined that this new rule does not "extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id. But see Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013).

To allow application of the *Martinez* rule, a reviewing court must determine (1) whether the petitioner's attorney in the first collateral proceeding, if counsel was appointed, was ineffective under *Strickland v. Washington*, 466 U.S. 668 687, 104 S.Ct. 2052 (1984), (2) whether the petitioner's claim

of ineffective assistance of trial counsel is "substantial," and (3) whether there is prejudice. *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir.2012), citing *Martinez*, 132 S.Ct. at 1321. Thus, according to the process outlined by the Ninth Circuit, in order to overcome the procedural bar to an ineffective assistance of trial counsel claim using *Martinez*, petitioner

> must show that trial counsel was ... ineffective, and that PCR [post conviction review] counsel's failure to raise trial counsel's ineffectiveness in the PCR proceeding fell below an objective standard of reasonableness. If trial counsel was not ineffective, then [the petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel "was not functioning as the 'counsel' guaranteed" by the Sixth Amendment.

*Sexton*, 679 F.3d at 1159 (quoting *Strickland*, 466 U.S. at 687). Where no counsel was appointed on postconviction review, cause is assumed and petitioner must demonstrate that his underlying ineffective assistance of trial counsel claim is substantial. *Martinez*, 132 S.Ct. at 1318–19. Applying this framework, petitioner's defaulted claims that may be saved by *Martinez* are: ground 2(b) -- trial counsel failed to review the clerk's file or investigate co-defendant Charma McCollum's mental health or criminal background; ground 2(g) -- trial counsel failed to challenge the complainant's testimony regarding the value of the items allegedly stolen; and ground 2(h)(ii) -- trial counsel failed to object to an improper flight instruction (ECF #19, pp. 9-11; 14-15; 17-18).

**a. Cause**

Petitioner argues he is entitled to have this court review the merits of his claims because he was denied the effective assistance of counsel in his initial post-conviction proceedings. He notes that Nevada law requires that claims of ineffective assistance of trial (and appellate) counsel be initially raised in such postconviction proceeding.

The Nevada Supreme Court has repeatedly held that claims alleging ineffective assistance of counsel, trial or appellate, may not be raised on direct appeal. *See Nika v. State*, 97 P.3d 1140, 1144–45 (Nev. 2004)(finding that the potential for a conflict of interest to arise if ineffective assistance of trial counsel were permitted on direct appeal makes such claims impractical); *Feazell v. State*, 906 P.2d 727, 729 (Nev. 1995)(claims of ineffective assistance of counsel must be raised at post-conviction). The only exception to this rule is if there has been an evidentiary hearing conducted by the trial court on allegations of ineffective counsel. *See Mazzan v. State*, 675 P.2d 409, 413 (Nev. 1984); *Feazell*, 906

P.2d at 729. Because petitioner had no counsel in his first postconviction proceedings and state law prohibited petitioner from raising his claims on direct appeal while he was represented by counsel, he has shown cause for his delay. The court next examines the underlying claims to determine if they are "substantial" and resulted in the necessary prejudice to overcome the bar as to each of these three claims.

**b. Prejudice**

To determine whether petitioner suffered prejudice because he did not have counsel on postconviction who could properly develop the facts of his claims and raise them effectively, the question must be answered: are the procedurally defaulted claims "substantial?" *Martinez*, 132 S.Ct. at 1321. The Court in *Martinez* cited to *Miller-el v. Cockrell*, 537 U.S. 322 (2003) for its standard requiring the petitioner to make a substantial showing of the denial of a constitutional right, suggesting that this standard is appropriate in deciding if a claim would satisfy the prejudice prong for overcoming a procedural default. *Id* at 1319. Under *Miller-el*, a petitioner need not show that he will prevail on the merits. *Miller-el*, 537 U.S. at 337, citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (a showing that "a court could resolve the issue [differently] or that the questions are adequate to deserve encouragement to proceed further" is sufficient to meet the substantial showing required for appellate review); *see also Slack v. McDaniel*, ("The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.") 529 U.S. 473, 484 (2000). Thus, this court must determine if petitioner has made a substantial showing of the denial of a constitutional right in his postconviction proceedings on the allegations that:

ground 2(b): trial counsel failed to review the clerk's file or investigate co-defendant's mental health or criminal background;

ground 2(g): trial counsel failed to challenge the complainant's testimony regarding the value of the items allegedly stolen; and

ground 2(h)(ii): trial counsel failed to object to an improper flight instruction.[2]

---

[2] Despite potentially confusing briefing with respect to the motion to dismiss, this court has already deemed the ineffective assistance of counsel claim in ground 2(f) exhausted (*see* ECF #33,

Review of the state-court proceedings, federal petition, and briefing on the motion to dismiss reflects the following: at petitioner's trial, the complainant, petitioner's codefendant, an eyewitness, and several police officers testified. Petitioner first argues in ground 2(b) that if trial counsel had conducted the necessary investigation, he would have discovered that the codefendant was arrested while riding around in a stolen car while on bond for this case (ECF #56, p. 13). Counsel would have learned that the codefendant was bipolar and that bipolar disorder is associated with impaired memory. He thus could have challenged her testimony on the basis that her mental illness prevented her from accurately perceiving what happened. Petitioner contends that if his counsel had properly investigated his codefendant the result of his trial would have been different. *Id*. at 14.

At trial, the complainant testified to the following: she stopped at the bar in question about 6:30 in the morning on Christmas Eve after working a double shift. Exh. 17, pt. 1, pp. 127-128. Her apartment was about two blocks away on Sierra Vista. She ordered a drink and set her keys, phone, credit card and driver's license on the bar. A man came over and was hitting on her; it made her nervous so she put her keys and phone in her coat pocket. After the man walked away, petitioner sat down and introduced himself to her as "Aytch." The codefendant joined them and introduced herself as "Jello." Petitioner stood very close to the complainant.

The complainant paid her tab, and when she reached into her coat, her keys and phone were gone. She put on her coat and searched all the pockets, the floor and the surrounding area and told the bartender to call the police. Her car was still in the parking lot. The police arrived, she gave a statement, and police left. Police then called the bar and told her they had apprehended some people and needed her to identify them. The police said they had found her keys and phone, along with a telescope and some luggage and dry cleaning with her name on it. Complainant recognized the passengers in a white van as the petitioner and codefendant. Police also took her to her apartment, where the door was ajar and the place had been "trashed." She testified that the suitcase, telescope and dry cleaning had been in her apartment. *Id*. at 141. She testified that several evening gowns were among the items taken from the apartment, along with a company handbook that was never recovered.

p. 17).

The complainant identified petitioner and his codefendant in court (*see* complainant's testimony, Exh. 17, pt. 1, pp. 127-151).

At trial, petitioner's codefendant testified to the following: she only met petitioner the morning of the incident. Exh. 17, pt. 2, p. 58. It was Christmas Eve, her birthday, and she took defendant up on his offer of a birthday drink. Petitioner drove her in a white van to the bar in question. They gambled and had a drink; at some point petitioner went over and sat down next to the complainant. The codefendant went over to them and introduced herself by her nickname, "Jello." Petitioner got up. After a few minutes, the codefendant went to look for him, found him outside, got in the van with him and they left. He told her he needed to make a stop before he dropped her off. He parked on Sierra Vista, and she stayed in the van while he went into an apartment building. While waiting she dozed because she had been up all night and had had a few drinks. She woke up to petitioner closing the side door to the van. As he drove, petitioner was looking through a "book" or "planner," which he then tossed out the window. *Id.* at 72. Shortly thereafter, the police pulled up and arrested the two. *Id.* (*see* codefendant's direct testimony, Exh. 17, pt. 2, pp. 58-81).

An eyewitness testified as follows: he was working at the bar at the time in question. Exh. 17, pt. 1, p. 66. He saw petitioner and the codefendant come into the bar and sit on either side of the complainant. Petitioner stood very close to complainant. Petitioner got up; the witness, who found petitioner somewhat suspicious, checked the restroom after a few minutes for petitioner. He then went outside where he saw petitioner and codefendant get into a white van with blue stripes. He went back into the bar where complainant was "sort of like hysterical" because she was missing her cell phone and her keys. *Id*. at 72. The eyewitness went back outside and saw petitioner walking down a line of cars parked beside the bar with a set of keys, going from car to car. He then got into the white van, and the witness saw the first three numbers of the license plate –832. *Id.* at 74 (*see* testimony, Exh. 17, pt. 1, pp. 66-76).

A police officer testified that based on statements by the eyewitness and the complainant, he pulled over a white van with license plate 832-TVD and ultimately took the two occupants–petitioner and his codefendant–into custody. Exh. 17, pt. 1, pp. 103-104.

The court concludes that petitioner's claim that trial counsel was ineffective for failing to adequately investigate his codefendant is not substantial. The codefendant's trial testimony was consistent with the testimony of the complainant, the eyewitness and the police officers. Nothing in the record or bare assertions of petitioner supports the contention that if trial counsel had further investigated the codefendant he could have successfully challenged her memory, which in turn would have led to a different result at trial. Ground 2(b) is not substantial and is not deserving of further encouragement.

Second, in ground 2(g), petitioner argues that trial counsel was ineffective in failing to challenge the complainant's testimony regarding the value of the items allegedly stolen (ECF #56, pp. 15-16). Petitioner argues that the evidence contradicted complainant's testimony that items totaling more than $250 in value were stolen from her. He argues that while the complainant testified that several evening gowns were stolen, the photographs the police took of the contents of the van do not depict any gowns. Petitioner asserts that challenging her veracity and reliability would have led to a different trial result *Id*.

At trial, the complainant testified that she purchased her phone through her employer for $250. Exh. 17, p. 1, p. 143. She testified that several evening gowns and a couple of suits were taken from her apartment, that the gowns cost between $250 and $300 each and that the total amount for the gowns and suits was over $1,000. *Id*. at 142. She testified that she paid about $75 for the telescope and $35 for the suitcase. *Id*. at 141-142.

A police officer testified that there were several items of clothing in plastic dry-cleaning bags found in the van with a dry cleaning slip bearing the complainant's name. Exh. 17, pt. 2, p. 33. He also testified that a cell phone and keys that matched the description complainant provided were found in the van's center console. *Id.*

Given the overall testimony of the complainant and the police officers at the scene, the assertion that trial counsel was ineffective in failing to challenge complainant's testimony that evening gowns were stolen on the basis that no police photographs depicted evening gowns is not a substantial ineffective assistance of counsel claim deserving of further encouragement.

Third, in ground 2(h)(ii) petitioner asserts that trial counsel was ineffective for failing to object to the jury instruction that flight immediately after a crime may be considered in determining guilt because no evidence was offered that petitioner fled the scene to avoid arrest (ECF #56, p. 16; Exh. 18, jury instruction #20). He claims that had counsel objected to this instruction there is a reasonable probability that such objection would have led to a different trial result.

This court disagrees. This claim is not substantial. The trial testimony of an eyewitness, complainant and the codefendant reflected that petitioner was talking with the complainant and then abruptly left the bar. Exh. 17, pt. 1, p. 68. Moreover, assuming, *arguendo*, that the court erred in giving this instruction to the jury, all of the witnesses provided overall consistent testimony and provided overwhelming evidence of petitioner's guilt. The contention that an objection to this (arguably irrelevant at best) jury instruction would have led to a different trial result is simply not worthy of further encouragement.

Accordingly, petitioner has not demonstrated that he suffered prejudice as the result of the procedural default of these claims because he has not shown that the ineffective assistance of trial counsel claims in grounds 2(b), 2(g) and 2(h)(ii) are substantial. These claims are, therefore, dismissed from this action as procedurally barred.

**Grounds 2(f), 3 and 4**

Petitioner argues that he can demonstrate cause and prejudice to overcome procedural default of the following claims:

The claim in ground 2(f) that the trial court erred in allowing the state to file an amended information that added an additional offense on the day of trial in violation of his Fourteenth Amendment due process rights (ECF #16, pp. 13-14);

ground 3–that the trial court violated petitioner's Fourteenth Amendment due process and liberty rights by refusing to conduct a hearing regarding juror misconduct (ECF #16, p. 20); and

ground 4–that the trial court violated his Fourteenth Amendment due process rights by relying on highly suspect evidence during sentencing (ECF #16, p. 21).

However, petitioner sets forth no argument as to cause whatsoever apart from his contention that failure to appoint counsel to assist him with his state postconviction petition provides cause for his

failure to present his ineffective assistance of counsel claims in that first state postconviction petition (ECF #56, p. 9). Grounds 2(f), 3 and 4 are not ineffective assistance of counsel claims and should have been raised initially in petitioner's direct appeal. Petitioner has not demonstrated that an impediment external to the defense hindered his ability to bring these three claims. Accordingly, these three claims shall be dismissed with prejudice as procedurally barred.

### Ground 7

Ground 7 remains before the court to the extent that it asserts a claim of cumulative error based on alleged errors set forth in the remaining grounds that this court shall consider on their merits.

### Ground 6

Finally, the court notes that petitioner filed a notice with the court clarifying that he has voluntarily dismissed ground 6 (ECF #s 55, 64).

### III. Conclusion

**IT IS THEREFORE ORDERED** that respondents' partial motion to dismiss (ECF #51) is **GRANTED**. The following grounds are **DISMISSED** as procedurally barred:

Grounds 2(b), 2(g), 2(h)(ii), 2(f), 3 and 4.

**IT IS FURTHER ORDERED** that respondents shall file their answer to the claims remaining before the court within **forty-five (45) days** of the date of this order. The answer shall contain all substantive and procedural arguments as to all surviving grounds of the petition and shall comply with Rule 5 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. §2254.

**IT IS FURTHER ORDERED** that petitioner shall have **forty-five (45) days** following service of the answer to **FILE AND SERVE** a reply brief.

**IT IS FURTHER ORDERED** that respondents' motion to extend time to file a reply in support of their motion to dismiss (ECF #62) is **GRANTED** *nunc pro tunc*.

Dated: September 3, 2015.

_____
UNITED STATES DISTRICT JUDGE