# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARTINEZ S. AYTCH,

    Petitioner,

vs.

ROBERT LEGRAND et al.,

    Respondents.

3:10-cv-00767-RCJ-WGC

**ORDER**

This is a habeas corpus Petition under 28 U.S.C. § 2254. Martinez Aytch, a prisoner in the custody of the State of Nevada, challenges his 2008 Nevada state convictions for grand larceny and burglary.

**I.    PROCEDURAL HISTORY**

> [O]n December 24, 2006, Tara Pelaccio was at a bar near her house. She hung her jacket on the back of her chair and placed her keys and cell phone in the left pocket of her jacket. Shortly thereafter, Aytch and a female companion, Charma McCollum, approached Pelaccio. Aytch stood on her left and McCollum on the right. McCollum introduced herself as "Jello" and when Pelaccio turned to speak to her, Aytch abruptly left the bar. Then McCollum left. When Pelaccio was about to leave the bar, she noticed that her keys and cell phone were missing. The bartender called the police. Another bar patron went outside and saw Aytch and McCollum get into a white van with the partial license plate number "832." A short time later, the police stopped a white van with license plate number 832-TVD. Aytch and McCollum were inside, and Pelaccio's keys and cell phone were found in the center console of the van. A search of the van also uncovered luggage, a telescope, clothing, and other items belonging to Pelaccio.

> Police investigators accompanied Pelaccio to her apartment where they found the door ajar. Although there was no sign of forced entry, the house had been "trashed."

(Nev. Sup. Ct. Op. 1–2, No. 51386, ECF No. 19-16 (affirming Petitioner's conviction on direct appeal). Aytch was charged with one count of conspiracy to commit larceny under Nevada Revised Statutes section ("NRS") § 199.480, two counts of grand larceny under NRS 205.220 and 205.222, and one count of burglary under NRS 205.060. (Second Am. Inf. 2–4, ECF No. 19-4). McCollum was indicted on the same charges. (Inf. 2–4, ECF No. 17-11). The State informed Aytch that it would be seeking to apply the habitual criminal statute, NRS 207.010, in light of his two prior convictions for armed robbery, two prior convictions for burglary, one prior conviction for theft, and one prior conviction for robbery of a victim over sixty-five years old. (Second Am. Inf. 5–6).

Aytch was acquitted of conspiracy but convicted on both counts of grand larceny and one count of robbery on January 16, 2008. (Verdict, ECF No. 17-16). McCollum was acquitted of all charges. (Verdict, ECF No. 17-14). The trial court sentenced Aytch to concurrent life sentences, with parole eligibility after ten years, for each of the three counts. (J., ECF No. 19-7). Aytch appealed, and the Nevada Supreme Court affirmed. (Nev. Sup. Ct. Op., No. 51386). Aytch filed a state petition for a writ of habeas corpus on July 1, 2009. (State H.C. Pet., ECF No. 20). The state court denied the petition, he appealed, and the Nevada Supreme Court affirmed. (Nev. Sup. Ct. Op., No. 54832, ECF No. 20-13).

Aytch filed the present Petition on December 8, 2010, amending it on September 27, 2011. (ECF Nos. 4, 16). The Court ruled that several grounds were unexhausted and granted a stay for Aytch to exhaust them in state court. (ECF Nos. 33, 45). The Nevada Supreme Court found Aytch's new state petition successive and untimely. (Nev. Sup. Ct. Op., No. 65843, ECF

No. 48-14). The Court reopened the present Petition on January 9, 2015. (ECF No. 49).

Grounds 2(b), 2(f), 2(g), 2(h)(ii), 3, 4, and 6 have been variously dismissed or abandoned. (ECF Nos. 55, 65). The State answered, and Aytch replied. (ECF Nos. 67, 73). The Court now adjudicates the remaining Grounds of the Petition on the merits.

## II.     DISCUSSION

### A.     Legal Standards

Section 2254(d) of Title 28, a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for a federal court's consideration of a petition for habeas corpus by a prisoner in state custody:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These standards of review "reflect the . . . general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "[A] state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially

indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent, "if the state court identifies the correct governing legal principle from our decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" standard requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, a federal court looks to the last reasoned decision in the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.    The Merits**

**1.    Ground 1**

Aytch argues that there was insufficient evidence to sustain a conviction for each count of grand larceny and burglary. The argument hinges on *Jackson v. Virginia*, wherein the Supreme Court held that a conviction comports with due process if "any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt" when viewing "all of the evidence . . . in the light most favorable to the prosecution." 443 U.S. 307, 319 (1979). This "standard must be applied with explicit reference to the substantive elements of the criminal

offense as defined by state law." *Id.* at 324 n.16. "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (citation omitted).

The Court applies the deferential standards of *Jackson* through the deferential lens of AEDPA in examining Aytch's argument that the Nevada Supreme Court erred when it found a rational trier of fact could have found him guilty beyond a reasonable doubt, i.e., this Court applies a "double layer of deference." *Smith v. Mitchell*, 624 F.3d 1235, 1239 (9th Cir. 2010). Aytch "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

Ground 1 has three subparts. First, Aytch argues there was insufficient evidence to support count 2 (the theft of the cell phone and keys from the jacket). Second, he argues there was insufficient evidence to support count 4 (the theft of the telescope, suitcase, and clothing from the apartment). Third, he argues there was insufficient evidence to support count 3 (the burglary of the apartment).

**a.    Ground 1(a)**

Aytch argues, "there is simply no proof that at the time Pelaccio's phone was stolen that the . . . value was $250.00 or more." The only evidence adduced at trial as to the value of the phone was Pelaccio's testimony that the cell phone "was taken out of [her] paycheck for 250," which was "at a discount because [she] was an employee." (Trial Tr. 141:22–142:7, ECF No. 18). The evidence adduced as to the value of the cell phone, when viewed in a light most favorable to the prosecution, was easily sufficient for a rational trier of fact to have found beyond

a reasonable doubt that the cell phone was worth at least $250. Pelaccio testified that she paid exactly $250 for the phone, which was in fact less than the actual value because she was an employee of the seller.

The only remaining question is whether it was an error of federal law for the state courts to use the purchase price of the cell phone (as opposed to the market value at the time of the theft or some other measure) to calculate its value. It was not. The Nevada Supreme Court once ruled, "The true criterion for the value of property is the fair market value of the property at the time and place it was stolen if there be such a standard market. But where such market value cannot be reasonably determined other evidence of value may be received such as replacement cost or purchase price." *Cleveland v. State*, 461 P.2d 408, 409 (Nev. 1969) (citation omitted). Petitioner argues that the state courts therefore erred in not requiring proof of market value of the cell phone at the time of the theft. Applying *Cleveland*, however, the Nevada Supreme Court ruled, "there does not appear to be a standard market for used cellular phones, and thus *the purchase price was an appropriate measure*. . . . Thus, we conclude that there was sufficient evidence to support the jury conclusion that the stolen cell phone and keys were worth at least $250." (Nev. Sup. Ct. Op. 3, No. 51386 (emphasis added)). That the purchase price of the cell phone was an appropriate measure of value for the purposes of state larceny law is a pronouncement of state law with which this Court is not free to disagree. The only question of federal law at issue under § 2254 is whether the evidence was sufficient, when viewed in a light most favorable to the prosecution, for any rational person to have found beyond a reasonable doubt that the purchase price of the cell phone was at least $250. The Court cannot say that no rational factfinder could have so found, because the only evidence adduced on the point was Pelaccio's testimony that she paid $250 for it.

**b.     Ground 1(b)**

Aytch argues there was insufficient evidence to support his conviction for grand larceny of the telescope, luggage, suits, and evening gowns. This claim fails for the same reason Ground 1(a) does. Pelaccio's testimony was that the telescope cost approximately $75, the luggage cost about $35, and that the suits and evening gowns cost a total of "well over $1,000." (Trial Tr. 140:21–141:15). Again, this Court is bound by the Nevada Supreme Court's pronouncement that the purchase price was the appropriate measure of value for the purposes of larceny under state law. The Court cannot say that no rational factfinder could have found these items not to have been purchased for a total of $250 or more. Aytch further contends there was insufficient evidence to find the gowns were stolen at all. This argument fails because there was some evidence that they were stolen, i.e., Pelaccio's testimony.

**c.     Ground 1(c)**

Aytch argues, "there is simply no proof that Aytch is guilty of burglary." To obtain a conviction for burglary, the State had to prove that Aytch did "willfully, unlawfully, and feloniously enter, with intent to commit larceny, that certain apartment occupied by" Pelaccio. *See* Nev. Rev. Stat. § 205.060(1).

Pelaccio testified that Aytch and McCollum sat down next to her on the day in question, and that her keys and cell phone were in her left coat pocket, the side that Aytch was on. (Trial Tr. 130:14–133:22). McCollum began a conversation, and so Pelaccio turned towards her, and "they had started crowding [her]." (*Id.* 133:23–135:10). When she then tried to pay because she wasn't in the mood to talk to anyone, she noticed her keys and cell phone were missing and asked the bartender to call the police. (*Id.* 135:10–21). The police found Aytch and McCollum in a van. (*Id.* 102:4–103:12). Inside the van, the police found her keys, as well as her belongings

described above, which she had left in her apartment; indeed, some of the dry cleaning even had her name on it. (*Id.* 104–08, 137–40). McCollum also testified that Aytch drove her to Pelaccio's apartment, left the van for a few minutes while McCollum nodded off because she was tired and trying to sober up, came back, and opened and closed one of the back side doors. (Trial Tr. 216–19, ECF No. 18-1). From this, a rational jury could find that Aytch burgled Pelaccio's apartment.

### 2. Ground 2

In Ground 2, Aytch argues that "[t]rial counsel rendered ineffective assistant prior to and throughout trial and sentencing." To succeed on an ineffective assistance of counsel claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts evaluate attorney performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct well within the wide range of reasonable conduct. *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004). When a state court has reviewed a *Strickland* claim, a federal court's habeas corpus review is "doubly deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011).

#### a. Ground 2(a)

Aytch first argues that "[t]rial counsel failed to seek discovery or investigate the value of Pelaccio's Helio Kickflip cell phone." The Nevada Supreme Court denied Aytch's claim because Aytch failed to demonstrate either deficiency or prejudice. Aytch presented evidence

post trial that the market value of the phone ranged from between $100 to $250. (ECF Nos. 21-9, 21-10). But this evidence would not have had a "reasonable probability" of affecting the outcome of the proceedings, because the state trial court instructed the jury that purchase price was a sufficient way to prove its value, the Nevada Supreme Court affirmed on that point under state law, and Petitioner does not proffer any evidence contradicting Pelaccio's testimony concerning the purchase price of $250.

### b. Ground 2(b)

Aytch argues that "[t]rial counsel failed to file a motion to sever." The Nevada Supreme Court rejected this claim because Aytch failed to demonstrate either deficiency or prejudice.

Nevada law provides for severance if a defendant would be "prejudiced" by joinder. Nev. Rev. Stat. § 174.165. Severance is applicable "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Chartier v. State*, 191 P.3d 1182, 1185 (Nev. 2008) (citation omitted). In other words, Aytch must show a reasonable probability that the joint trial was "manifestly prejudicial." *Bruno v. State*, 281 P.3d 1157, 1159 (Nev. 2009).

Aytch argues that "trial counsel should have been aware that Aytch would have been prejudiced by a joint trial with McCollum because McCollum had no criminal history and would testify, whereas Aytch, who had a criminal record, would likely decline to testify. Based on the evidence noted above and McCollum's testimony, the Nevada Supreme Court's conclusion that Aytch failed to establish a reasonable probability as to a different outcome in the proceeding was not an unreasonable determination of fact. Indeed, the State could have simply taken McCollum to trial first and, after she was acquitted, put her on the stand

to testify to the same—and she would have no right to invoke the Fifth Amendment not to testify.

c. **Ground 2(d)**

Aytch argues, "[t]rial counsel failed to file a motion suppress evidence or in the alternative to dismiss the indictment." The Nevada Supreme Court rejected this claim because Aytch failed to demonstrate either deficiency or prejudice. Aytch argues that because the property was photographed at the scene of the arrest and then released to Pelaccio, Petitioner had no opportunity to inspect it for evidence of its value. This argument necessarily fails for lack of prejudice, because under state law as confirmed by the Nevada Supreme Court, the purchase prices attested to by Pelaccio were the appropriate measures of value, and those prices cannot have been affected by anything the officers did or failed to do with the evidence.

d. **Ground 2(e)**

Aytch argues, "[t]rial counsel failed to investigate and collect a videotape of the offense at the Fun Hog Ranch bar." He argues, "counsel would have learned that the Fun Hog bar had a video surveillance system, which covered the area where Aytch allegedly stole Pelaccio's keys and cell phone." (*Id.*). The Nevada Supreme Court rejected this claim because Aytch failed to demonstrate either deficiency or prejudice. It explained that Aytch "failed to demonstrate that a surveillance tape existed, . . . that the surveillance tape would have shown the portion of the bar where the victim was sitting, or that the tape would be exculpatory." (*Id.* at 5). Aytch counters that "the testimony at trial was that the Fun Hog bar had video surveillance in the bar area, which is where Pelaccio stated she was." But while the bartender testified that "there's video surveillance inside [the] bar," (Trial Tr. 90, ECF No. 18), an investigating officer testified that he "asked about it and it wasn't available," (Trial Tr. 188, ECF No. 18-1). Therefore, the Nevada

Supreme Court's factual determination was not unreasonable, and Aytch has failed to meet his burden of showing what an investigation would have revealed and how it would have created a reasonable probability of a different outcome. *See Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000); *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994).

Moreover, Aytch does not contest that he has failed to show that "the tape would be exculpatory." Instead, he asserts that "prejudice must be presumed due to counsel's failure to obtain the surveillance tape, which could have substantiated Aytch's claim of innocence." That, though, is not how the prejudice inquiry works, except in a small subset of cases not applicable here. *See Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Strickland*, 466 U.S. at 692.

### e. Ground 2(h)(i)

Aytch argues that trial counsel failed to object to the jury instruction for the valuation element of grand larceny. Jury Instruction No. 13 stated, "Value may be shown by evidence as to purchase price, price tag, or by replacement cost." (Jury Instr. 13, ECF No. 19). Because the Nevada Supreme Court ruled that this instruction was proper under state law, counsel was not ineffective for failing to object to it.

### f. Ground 2(h)(iii)

Atych next complains that trial counsel "rendered ineffective assistance during sentencing." "In particular, counsel failed to review Aytch's prior convictions and argue that the substance of these prior convictions did not justify treatment under the habitual criminal statute." The Nevada Supreme Court rejected this claim because Aytch failed to demonstrate either deficiency or prejudice. (Nev. Sup. Ct. Op. 6–7, No. 54832). It noted that, "even assuming that three out of the six convictions entered by the State were flawed as [Aytch] claimed, [Aytch] still had three convictions that qualified him for large habitual criminal treatment." (*Id.*). So Aytch

would be a large habitual criminal[1] because he "ha[d] previously been three times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony." Nev. Rev. Stat. § 207.010(1)(b). Aytch argues, "none of these five convictions resulted in an actual prison sentence longer than five years." That does not matter under the statute, but he also argues trial counsel should have pleaded with the trial judge to exercise his discretion to discount one or more of the prior convictions in his discretion. *See id.* § 207.010(2).

The Court finds there was no reasonable probability the trial court would have chosen to discount four or more of the six prior felonies had counsel added to Petitioner's own arguments at sentencing on this point, where the trial court noted in response that Petitioner had

> been committing crimes and stealing and using guns and in prison most of your 30 years of adult life.
>
> . . . .
>
> Mr. Aytch, you should finish the rest of your life in prison. It is the only place where you behave. You need to be there forever.
>
> . . . .
>
> [Y]ou're unrehabilitatable. You're never going to change. You've been doing the same thing for 30 years. If they parole you, shame on them because you're not going to change. This is who you are. It's what you do.
>
> You know, it's discretionary to determine whether you're a habitual criminal, but I can't imagine any judge not exercising their discretion in doing that. I mean, you're the definition of a habitual criminal.

---

[1] Under Nevada law, there are two tiers of habitual criminal designation. A person convicted of a felony who has previously been convicted of two crimes that were felonies where committed, or which would be felonies if committed in Nevada, is subject to a sentence of 5 to 20 years. Nev. Rev. Stat. § 207.010(1)(a) (the "small habitual criminal" statute). If the person had three such prior convictions, he is subject to a sentence of 25 years to life. *Id.* § 207.010(1)(b) (the "large habitual criminal" statute).

(Sent. Tr. 6:3–8:14, ECF No. 19-6). There is no reasonable probability the trial judge would have exercised his discretion to discount any of the prior offenses had trial counsel further argued the point.

**3.     Ground 5**

Aytch argues, "[a]ppellate counsel rendered ineffective assistance by failing to raise meritorious issues." To establish a claim of ineffective assistance of appellate counsel, a petitioner must show: (1) that his appellate counsel was objectively unreasonable; and (2) there "is a reasonable probability that, but for counsel's [unprofessional errors], he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *see also Davila v. Davis*, 137 S. Ct. 2058, 2067 ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."). The "doubly deferential" analysis mandated by AEDPA applies here. *See Pinholster*, 563 U.S. at 190, 202.

**a.     Ground 5(a)**

Atych argues appellate counsel failed to argue the "trial court violated Aytch's due process rights when it relied on an Order of Sentence and Commitment from 1980 that did not provide proof that Aytch was represented by counsel," "the trial court relied on a 1993 Judgment of Conviction that bore no seal from the time the convicting court entered judgment," and "the trial court relied on an uncertified 1997 Judgment of Conviction." The Nevada Supreme Court rejected these claims because Aytch "failed to demonstrate that these issues had a reasonable probability of success on appeal." (Nev. Sup. Ct. Op. 7–8, No. 54832). The Court agrees. Aytch does not even contend that any of the convictions were actually incorrect, and he therefore does not carry his burden.

**b.     Ground 5(b)**

Atych argues appellate counsel failed to argue the "trial court violated due process and [Aytch's] liberty interest by refusing to conduct a hearing regarding juror misconduct." The Nevada Supreme Court rejected these claims because Aytch "failed to demonstrate that these issues had a reasonable probability of success on appeal." (*Id.*).

Aytch's counsel informed the state trial court that he saw Pelaccio "sitting out in the hallway talking with a gentleman" while "three of our jurors . . . appeared to be within listening distance . . . ." (Trial Tr. 121:23–122:3, ECF No. 18). Counsel explained that he heard "her discussing something about her children. I don't know what else had been discussed." (*Id.* 122:6–7). He told the judge that he had no "reason to believe anything about the case was being discussed." (*Id.* 122:8–10). A bailiff told the judge that the gentleman was from another department, and that the discussion "wasn't about this case. I asked both of them, they was [sic] talking about kids and I sent him down the side somewhere." (*Id.* 122:21–23).

The question is whether appellate counsel was ineffective for failing to raise the claim on appeal that the district court failed to *sua sponte* order a hearing to determine more about what was said, and what if anything any jurors heard. Upon receiving word of contact between the state and a juror, a trial court should conduct "a hearing with all interested parties permitted to participate." *Remmer v. United States*, 347 U.S. 227, 230 (1954); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). Here, the trial judge did hold a hearing. The hearing did not progress to individual questioning of each juror for prejudice, because the only evidence before the trial court was that the subject of the conversation (potentially) overheard by jurors had nothing to do with the matter being tried.

There was no evidence (or even any claim) that the discussion concerned the matter being tried. All parties had the opportunity to object, but none did.

Aytch points to no U.S. Supreme Court case, nor can this Court find any, clearly establishing that the trial court had a duty to conduct further investigation in this case. A presumption of prejudice does not arise unless the communication or contact is "about the matter pending before the jury," *Remmer*, 347 U.S. at 229, and the trial court properly concluded the hearing when no evidence tended to show that was the case. The Nevada Supreme Court's application of U.S. Supreme Court law here was not unreasonable.

### c. Ground 5(c)

Atych argues appellate counsel failed to raise the issue that the "trial court violated Aytch's right to a fair trial when it gave an errant flight instruction." Aytch argues the "trial court erred in giving this instruction because the law required evidence that Aytch fled the scene of the offense with consciousness of guilt and for the purpose of avoiding arrest. However, no such evidence existed." The Nevada Supreme Court rejected this argument because Aytch "failed to demonstrate that these issues had a reasonable probability of success on appeal." (Nev. Sup. Ct. Op. 7–8, No. 54832). Aytch does not cite any U.S. Supreme Court precedent clearly establishing that a dubious flight instruction violates a defendant's right to a fair trial. "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Instead, "the only question" is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Here, it does not. Petitioner's flight could easily have demonstrated consciousness of guilt because he left when

Pelaccio signaled that she wanted to pay her bill—and would thus soon discover that her apartment keys were missing. (Trial Tr. 135:10–20, ECF No. 18).

### d. Ground 5(d)

Atych argues appellate counsel failed to raise the issue that the "trial court erred by giving an incorrect instruction regarding valuation." This ground fails for the same reason Ground 2(h)(i) does. That is, because the Nevada Supreme Court ruled that the trial court's instruction on valuation was correct under state law, this claim necessarily fails at a minimum for lack of prejudice.

### 4. Ground 7

Aytch argues "[c]ummulative error compels this Court to grant relief."

> [T]he Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal . . . . [T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive" and thereby had a "substantial and injurious effect or influence" on the jury's verdict.

*Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (citations omitted). The Court perceives no trial error, much less cumulative error rendering the trial fundamentally unfair. The jury's verdict was sound and not improperly influenced, and Aytch was not deprived of his right to a fair trial. *See Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002).

///

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Petition, and a certificate of appealability, are DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 2nd day of January, 2018.

_____
ROBERT C. JONES
United States District Judge